# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

|  |  |  |
|---|---|---|
| | § | |
| **BANDSPEED, INC.,** | § | |
| | § | |
| **PLAINTIFF** | § | |
| | § | |
| , v. | § | **Case No. 1:14-cv-00436-LY** |
| | § | |
| **QUALCOMM INCORPORATED,** | § | |
| **QUALCOMM ATHEROS, INC., and** | § | |
| **QUALCOMM INNOVATION** | § | |
| **CENTER INC.,** | § | |
| | § | |
| **DEFENDANTS.** | § | |

## <u>DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS THAT PLAINTIFF'S INFRINGEMENT CLAIMS ARE BARRED AND REQUEST FOR ORAL HEARING ON THE MOTION</u>

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................. 1

II.  STATEMENT OF THE ISSUES TO BE DECIDED ..................................... 3

III. REQUEST FOR ORAL HEARING ............................................................... 3

IV.  FACTUAL BACKGROUND ......................................................................... 3

V.   LEGAL STANDARD ..................................................................................... 6

   A.   Judgment On the Pleadings .................................................................... 6

   B.   Contract Interpretation ........................................................................... 7

VI.  ARGUMENT ................................................................................................... 7

   A.   Bandspeed's Claims of Infringement Are Barred Because Bandspeed Granted a Release to Defendants. ............................................................... 7

   B.   Bandspeed's Claims of Infringement Are Barred Because the Accused Products Are Licensed. ............................................................................ 9

      1.   The license granted under the Agreement extends to Defendants as the parent and affiliates of licensee Cambridge Silicon Radio Limited. ........................................... 10

      2.   The license granted under the Agreement was transferred and/or assigned to Defendants through a Change of Control. ................. 13

   C.   Bandspeed's Claims of Infringement Are Barred Because Bandspeed Has Covenanted Not to Sue Defendants. ................................................. 15

      1.   The covenant granted under the Agreement extends to Defendants as the parent and affiliates of Cambridge Silicon Radio Limited. ........................................................ 16

      2.   Cambridge Silicon Radio Limited's rights under the covenant were transferred and/or assigned to Defendants through a Change of Control. ............................................... 18

VII. CONCLUSION ................................................................................................ 19

## I.       INTRODUCTION

Defendants Qualcomm Incorporated, Qualcomm Atheros, Inc., and Qualcomm Innovation Center Inc. (collectively, "Defendants") are entitled to judgment on the pleadings under FEDERAL RULE OF CIVIL PROCEDURE 12(c) because Bandspeed Inc.'s ("Bandspeed") claims of infringement are barred by a release, license, and covenant not to sue granted by Bandspeed under a Binding Settlement and License Agreement ("Agreement").

A motion for judgment on the pleadings under FEDERAL RULE OF CIVIL PROCEDURE 12(c) is subject to the same standards as a motion to dismiss under FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6).  *Doe v. MySpace, Inc*., 528 F.3d 413, 418 (5th Cir. 2008).  A motion under Rule 12(c) "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co*., 313 F.3d 305, 312 (5th Cir. 2002).  The "pleadings" for purposes of a Rule 12(c) motion include not only the pleadings themselves, but also any exhibits to the pleadings or matters incorporated by reference in the pleadings.  FED. R. CIV. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *see also Tellabs, Inc v Makor Issues & Rights, Ltd*, 551 US 308, 322 (2007) (holding that, when considering a motion to dismiss, courts should examine "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice," in addition to the complaint in its entirety").

Here, the Agreement precluding Bandspeed's claims is squarely pled in Defendants' Amended Answer and Counterclaims and was attached as Exhibit A thereto. Accordingly the question of whether the release, license, or covenant granted under the Agreement bars Bandspeed's claims is a question of law that can be resolved by this Court under Rule 12(c)

based on the plain language of the Agreement.  *See* FED. R. CIV. P. 10(C), 12(c); *see also Tellabs*, 551 U.S. at 322.

Under the Agreement, Bandspeed granted certain rights and protections to Cambridge Silicon Radio Limited and its parents, subsidiaries, affiliates, and successors (collectively "Protected Entities").  Bandspeed agreed to grant three independent methods of assuring that, in exchange for a substantial settlement payment, the Protected Entities would never again be threatened with claims of patent infringement by Bandspeed.  First, Bandspeed released the Protected Entities from all past, present, and future claims of infringement relating to Bandspeed's patents.  Second, Bandspeed granted the Protected Entities a perpetual, fully-paid license under Bandspeed's patents.  Third, Bandspeed covenanted not to sue the Protected Entities for the remaining term of Bandspeed's patents

Defendants—as the parent/successor and affiliates of Cambridge Silicon Radio Limited—are protected by the release, license, and covenant granted by Bandspeed under the Agreement.  Under the plain language of the Agreement, the release, license, and covenant extend to Defendants as the parent/successor and affiliates of Cambridge Silicon Radio Limited.  Additionally, the license and covenant have been transferred/assigned to Defendants pursuant to a provision of the Agreement that provides for the automatic transfer/assignment of the license and covenant to any entity that acquires Cambridge Silicon Radio Limited.

Accordingly, Defendants file this Motion seeking judgment pursuant to Rule 12(c) to enforce the terms of the Agreement and respectfully request that the Court dismiss Bandspeed's claims with prejudice.

## II.   STATEMENT OF THE ISSUES TO BE DECIDED

Whether Bandspeed's infringement claims against Defendants are barred by any of the (1) license, (2) covenant not to sue, and/or (3) release granted by Bandspeed under the Agreement.

## III.   REQUEST FOR ORAL HEARING

Pursuant to Local Rule CV-7(h), Defendants respectfully request an oral hearing on this Motion.

## IV.   FACTUAL BACKGROUND

Bandspeed sued Cambridge Silicon Radio Limited and thirty-seven other defendants in this district in the case styled *Bandspeed Inc. v. Garmin Int'l, Inc., et al.* (Case No. 1-11-cv-00771) asserting U.S. Patent Nos. 7,027,418 and 7,570,614.   Following protracted litigation, Bandspeed and Cambridge Silicon Radio Limited resolved that case, and other disputes between Cambridge Silicon Radio Limited and Bandspeed under the Binding Settlement and License Agreement.   *See* Exhibit A to Qualcomm Incorporated's Amended Answer and Amended Counterclaims at §§ 1, 2.C, 3, 4.   (Dkt. No. 94) (hereinafter "Agreement").   Under the Agreement, Bandspeed granted "CSR", as defined below, three distinct protections against claims of infringement with respect to the "Bandspeed Asserted Patents."   *See id.* at §§ 1, 2.C, 3, 4.   First, in Section 2.C, Bandspeed granted "CSR" a release as to all past, present, and future claims of infringement relating to the Bandspeed Asserted Patents.   *Id.* at § 2.C.   Second, in Section 3, Bandspeed granted "CSR" a perpetual license of the Bandspeed Asserted Patents.   *Id.* at § 3.   And third, in Section 4, Bandspeed granted "CSR" a covenant not to sue for infringement of the Bandspeed Asserted Patents for the remaining term of the Bandspeed Asserted Patents.   *Id.* at § 4.

The Agreement defines the "Bandspeed Asserted Patents" to include the '418 Patent, the '614 Patent, "and any and all divisionals, renewals, continuations, continuations-in-part, reissues, reexaminations, parents, or extensions thereof."   Bandspeed asserts six patents against Defendants in this Action: (1) the '418 Patent, (2) the '614 Patent (3) U.S. Patent No. 7,477,624; (4) U.S. Patent No. 7,903,608; (5) U.S. Patent No. 8,542,643; and (6) U.S. Patent No. 8,873,500 (collectively, the "Patents-In-Suit").   *See* Bandspeed's First Amended Complaint at ¶¶ 20 (Dkt. No. 54).   The first two patents—the '418 Patent and the '614 Patent—are specifically defined in the Agreement as Bandspeed Asserted Patents.   Agreement at § 1 (defining "Bandspeed Asserted Patents).   The remaining patents are all continuations and/or divisionals of the '418 Patent and are thus also Bandspeed Asserted Patents.   *Id.*.   Defendants believe it is undisputed that the definition of Bandspeed Asserted Patents includes the Patents-In-Suit and that each of the release, license, and covenant granted by Bandspeed under the Agreement extend to the Patents-In-Suit.

The Agreement defines "CSR" as "collectively, Cambridge Silicon Radio Limited, CSR Technology Inc., and each of their respective parents, subsidiaries, and affiliates."   Effective as of August 13, 2015, Qualcomm Incorporated is the parent of Cambridge Silicon Radio Limited, and Qualcomm Atheros, Inc. and Qualcomm Innovation Center Inc. are affiliates of Cambridge Silicon Radio Limited.   Specifically, Qualcomm Incorporated's subsidiary, Qualcomm Global Trading Pte. Limited ("QGT"), acquired CSR plc—the parent company of Cambridge Silicon Radio Limited—making Qualcomm Incorporated the parent and an affiliate of Cambridge Silicon Radio Limited.   *See* Qualcomm Incorporated's Amended Answer and Amended Counterclaims at ¶ 130 (Dkt. No. 94).   Qualcomm Atheros, Inc. and Qualcomm Innovation Center, Inc. are subsidiaries of Qualcomm Incorporated, and, thus, are now affiliates of

Cambridge Silicon Radio Limited.  *See* Bandspeed's First Amended Complaint at ¶¶ 7-8 (Dkt. No. 54) (alleging that Qualcomm Atheros, Inc. and Qualcomm Innovation Center Inc. are wholly owned subsidiaries of Qualcomm Incorporated); Qualcomm Incorporated's Amended Answer and Amended Counterclaims at ¶¶ 7-8 (Dkt. No. 94) (admitting the same).

Defendants believe it is undisputed that Qualcomm Incorporated is now the parent and an affiliate of Cambridge Silicon Radio Limited, and Qualcomm Atheros, Inc. and Qualcomm Innovation Center Inc. are now affiliates of Cambridge Silicon Radio Limited.  As such, Defendants have standing to assert their rights under the Agreement for resolution by this Court.

Bandspeed disputes, however, whether the definition of "CSR" includes any parents, subsidiaries, or affiliates that may arise after the October 28, 2012, effective date of the Agreement.  In addition to the plain language definition of "CSR"—which is not limited to parents, subsidiaries, and affiliates of Cambridge Silicon Radio Limited as of the October 28, 2012 Effective Date—the Agreement also includes a provision providing for the automatic transfer and/or assignment in the event Cambridge Silicon Radio Limited is acquired by another entity:

> This Agreement is non-assignable/non-transferrable by any Party, ***except*** (a) in connection with an internal reorganization or restructuring . . . , or (b) ***in connection with a Change of Control of [a] Party***,[1] in which case no consent shall be required whatsoever in connection with such Change of Control.

*Id.* at § 10 (emphasis added).

The Agreement defines a "Change of Control" to include "a transaction or series of related transactions in which . . . a party (the "Acquired Party") consolidates or merges with or into another entity, or sells, assigns, conveys, transfers, leases, or otherwise disposes of all or

---

[1] The Agreement defines the term "Party" to include "CSR," which is further defined to include "collectively, Cambridge Silicon Radio Limited, CSR Technology Inc., and each of their respective parents, subsidiaries, and affiliates."  *Id.* at § 1.

substantially all of its assets to another entity, or any other entity consolidates or merges with or into, the Acquired Party." *Id.* at § 1.  In the event of a "Change of Control" in which Cambridge Silicon Radio Limited is the Acquired Party, the Agreement provides that the license granted under Sections 3 and the covenant granted under Section 4 of the Agreement will be "automatically" transferred/assigned to the acquiring party.  *Id.* at § 10.  Defendants believe it is undisputed that QGT's acquisition of Cambridge Silicon Radio Limited constitutes a Change of Control as defined in the Agreement.

The Agreement selects California law as its governing law.  *Id.* at § 11.

## V.     LEGAL STANDARD

### A.     Judgment On the Pleadings

FEDERAL RULE OF CIVIL PROCEDURE 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c).  A motion for judgment on the pleadings under Rule 12(c) is subject to the same standards as a motion to dismiss under FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6).  *Doe v. MySpace, Inc*., 528 F.3d 413, 418 (5th Cir. 2008).  A motion under Rule 12(c) "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co*., 313 F.3d 305, 312 (5th Cir. 2002).  In ruling on a motion for judgment on the pleadings under Rule 12(c), a court may consider not only the pleadings themselves, but also any exhibits to the pleadings or matters incorporated by reference in the pleadings.  FED. R. CIV. P. 10(c); *Tellabs*, 551 US at 322; 5C Charles Alan Wright and Arthur R. Miller, Federal Practice & Procedure § 1367, at 207–08 (3d ed. 2004).

On a motion for judgment on the pleadings, factual allegations set out in the pleadings must be taken in the light most favorable to the nonmoving party.  *Hughes v. The Tobacco Inst.,*

*Inc.*, 278 F.3d 417, 420 (5th Cir. 2001).  Judgment on the pleadings is appropriate where "there are no disputed issues of material fact and only questions of law remain." *Brittan Commc'ns Int'l Corp. v. Sw. Bell Tel. Co.*, 313 F.3d 899, 904 (5th Cir. 2002).

### B.  Contract Interpretation

The interpretation of a contract is a matter of law.  *See e.g. Novamedix, Ltd. v. NDM Acquisition Corp.,* 166 F.3d 1177, 1180 (Fed. Cir. 1999); *Cachil Dehe Band ofen Wintun Indians of Colusa Indian Cmty. v. California*, 618 F.3d 1066, 1073 (9th Cir. 2010).  Under California law, "[t]he rules governing the role of the court in interpreting a written instrument are well established":

> The interpretation of a contract is a judicial function.  In engaging in this function, the trial court gives effect to the mutual intention of the parties as it existed" at the time the contract was executed.  Ordinarily, the objective intent of the contracting parties is a legal question determined solely by reference to the contract's terms.

*Id.* at 1073 (internal quotation marks and citations omitted).

## VI.  ARGUMENT

### A.  Bandspeed's Claims of Infringement Are Barred Because Bandspeed Granted a Release to Defendants.

In Section 2.C of the Agreement, Bandspeed granted "CSR" a broad release of all past, present, and future claims of infringement as to the Bandspeed Asserted Patents:

> CSR and Bandspeed, in each case on behalf of itself and its successors and assigns, irrevocably ***releases, acquits, and forever discharges the other Party and its successors and assigns of all past, present, and future claims*** that the manufacture, use or sale, offer to sell, importation, exportation, or any other disposition of ***any products sold by or for the other Party*** through the Covenant Period . . . ***infringed or infringes any [Bandspeed Asserted] Patents***.

Agreement at § 2.C (emphasis added). The Agreement defines the term "Party" to include both Bandspeed and "CSR," and defines the term "CSR" to include "collectively, Cambridge Silicon Radio Limited, CSR Technology Inc., and each of their respective parents, subsidiaries, and

affiliates." *Id.* at § 1.  The Agreement defines the "Covenant Period" as beginning on the Effective Date of October 18, 2012 and running through and including the tenth anniversary of the Effective Date (i.e., October 18, 2023).  *Id.* at § 1.  The Patents-In-Suit expire before the end of the Covenant Period.

In light of these definitions, the release granted by Bandspeed in Section 2.C of the Agreement, is applicable to Defendants.  As explained above, when Qualcomm Incorporated's subsidiary QGT acquired CSR plc, Qualcomm Incorporated became the parent company and successor of CSR plc and its subsidiary Cambridge Silicon Radio Limited, and Qualcomm Atheros, Inc. and Qualcomm Innovation Center Inc. became affiliates of CSR plc and Cambridge Silicon Radio Limited.  *See supra* at 4.  Thus, under the plain language of the Agreement, the release granted in Section 2.C applies to Qualcomm Incorporated, as both the parent and the successor to CSR plc and Cambridge Silicon Radio Limited, and to Qualcomm Atheros, Inc. and Qualcomm Innovation Center Inc., as affiliates of CSR plc and Cambridge Silicon Radio Limited.

The Northern District of California considered similar circumstances in *Advanced Micro Devices, Inc. v. Altera Corp.*, 1996 WL 119482 (N.D. Cal. Mar, 11, 1996).  MMI and Altera entered into a settlement agreement under which MMI and Altera were granted cross-licenses to one another's patents.  *Id.* at *1.  Although the agreement generally prohibited assignment or transfer of the rights under the agreement without written consent of the other party, it specifically provided for extension of the rights granted under the agreement to "any person, corporation, or other entity succeeding to [MMI's or Altera's] entire business."  *Id.*  (stating that "the licenses and rights granted hereunder to either party . . . shall be extendible to any . . . entity succeeding to its entire business").  Several months after the agreement was executed, MMI was

acquired by AMD.  *Id.*  Applying California law (which is the controlling law of the Agreement at issue), the court held that, "under the plain language of [the agreement], the rights which Altera granted to MMI . . . were extended to AMD."  *Id.* at *3.  Further, the court declined to confine the agreement to MMI's products; instead holding that the license extended to AMD's products as well.  *Id.* at *3-*4.

Like the agreement at issue in *Advanced Micro Devices*, the plain language of the release granted by Bandspeed under Section 2.C of the Agreement extends to Cambridge Silicon Radio Limited's parents, subsidiaries, affiliates, successors, and assigns.  Accordingly, under the plain language of the Agreement, the release granted by Bandspeed in Section 2.C extends to Qualcomm Incorporated as the parent and successor of Cambridge Silicon Radio Limited and Qualcomm Atheros, Inc., and Qualcomm Innovation Center Inc. as affiliates of Cambridge Silicon Radio Limited and bars Bandspeed from asserting claims alleging that any product sold by or for Defendants infringe the Patents-In-Suit.

## B.    Bandspeed's Claims of Infringement Are Barred Because the Accused Products Are Licensed.

In Section 3 of the Agreement, Bandspeed granted "CSR" a non-exclusive, perpetual, irrevocable, fully paid-up license of the Bandspeed Asserted Patents.  Agreement at § 3.  Section 3 of the Agreement states:

> Bandspeed grants to CSR and to any customer of CSR Licensed Products . . . a non-exclusive, non-transferable (***except as otherwise set forth herein***), perpetual, irrevocable, fully paid-up, worldwide license, . . . under the [Bandspeed Asserted] Patents, to make, have made, use, sell, offer for sale, import, export and otherwise dispose of  CSR Licensed Products, and to practice and perform any and all methods and processes in the manufacture, use, sale, offer for sale, import, export or other disposition of CSR Licensed Products.

Agreement at § 3.

The license granted by Bandspeed under the Agreement extends to Defendants and their accused products for two reasons.  First, the license granted by Bandspeed under the Agreement extends to Defendants as the parent and affiliates of licensee Cambridge Silicon Radio Limited.  Second, the license was automatically transferred and/or assigned to Defendants through a "Change of Control" of "CSR."

> **1.    The license granted under the Agreement extends to Defendants as the parent and affiliates of licensee Cambridge Silicon Radio Limited.**

As explained above, the Agreement broadly defines the term "CSR" to include "Cambridge Silicon Radio Limited, CSR Technology Inc., and each of their respective parents, subsidiaries, and affiliates."  Agreement at § 1.  Similarly, the Agreement broadly defines "CSR Licensed Products" to include "any and all products (including hardware, software, or services, or any combination thereof, including all technology incorporated therein) of CSR designed by or on behalf of CSR and made, sold, or, in the case of a software product, licensed, by CSR," except "products that CSR manufactures or has manufactured as a foundry or contract manufacturer for a third party based on designs provided by such third party in substantially complete form."  *Id.* at § 1.

In light of these definitions, the license granted by Bandspeed in Section 3 of the Agreement permits Cambridge Silicon Radio Limited, CSR Technology Inc., and their parents, subsidiaries, and affiliates to make, use, sell, offer to sell, import, export, or otherwise dispose of ***any and all products of*** Cambridge Silicon Radio Limited, CSR Technology Inc., ***and their parents, subsidiaries, and affiliates***, except products manufactured based on third-party designs.  Under the terms of the Agreement, the license extends to Defendants as the parent and affiliates of licensee Cambridge Silicon Radio Limited.  *See supra* at 4.

Defendants anticipate that the Plaintiff will rely on *Unova, Inc. v. Acer Inc.*, 363 F.3d 1278 (Fed. Cir. 2004), to argue that the license granted in Section 3 of the Agreement does not extend to Defendants.  But that case is not helpful to Plaintiff because the language and structure of the *Unova* agreement markedly differ from the terms of the Agreement at issue here—the *Unova* agreement evidenced an intent to limit the protections granted under the agreement in a way that the Agreement here does not.  Unova and Compaq entered into an agreement under which Unova granted to Compaq and its "parents" a release from infringement claims relating to conduct "which took place on or before May 4, 2001."  *Id.* at 1282.  The Federal Circuit considered whether the release granted by Unova extended to Hewlett-Packard following its subsequent purchase of Compaq in 2002.  *Id.* at 1280.  Applying California law,[2] the court held that the release provision of the Unova-Compaq agreement did not extend to Hewlett-Packard. *Id.* at 1281.

The court explained that, "[a] release from liability for patent infringement typically immunizes a party from liability for past acts of infringement, and the release provision found in the [Unova-Compaq] agreement does just that."  *Id.* at 1282.  Because the release provision referred to only "acts of past infringement" (*i.e.*, conduct "which took place on or before May 4, 2001"), the court concluded that it "most naturally [did] not refer to Compaq's future parents." *Id.* at 1282.  Although the court's holding is confined to whether the release provision extended to Hewlett-Packard, the court nonetheless looked to the license and covenant provisions to ensure that its interpretation of the release provision was "consistent with . . . the structure of the settlement agreement as a whole."  Applying the same logic used in its analysis of the release provision, the court concluded that neither the license nor the covenant provisions—both of

---

[2] The Agreement at issue here includes a provision stating that it "shall be interpreted and governed in accordance with California law."  Agreement at § 11.

which also referenced Compaq and its "parents"—extended to Hewlett-Packard.  The foundation

for this determination is found in the following sentence:

> Nowhere does the settlement agreement express Unova's and Compaq's intent to
> make such an arrangement, and our reading of the release provision as not
> releasing Compaq's future parents avoids any inconsistency.

*Id.* at 1283.

Thus, the operative question here is whether the Agreement indicates that the parties

intended the license granted under the Agreement to extend to an entity that became a parent,

subsidiary, or affiliate of "CSR" following execution of the Agreement.   The answer is

unequivocally yes.

The license granted by Bandspeed under the Agreement—unlike the release in the *Unova*

agreement—is not expressly or implicitly limited to past acts of infringement.  Rather, Section 3

of the Agreement specifically addresses licensing future infringement by granting a "perpetual"

(e.g., ongoing) right make, use, and sell products that infringe the Bandspeed Asserted Patents.

And other provisions of the Agreement confirm that this license extends to a third party under

certain conditions, such as those that occurred upon QGT's acquisition of Cambridge Silicon

Radio Limited.  *See supra* at 4.

Should any question remain as to whether the Agreement indicates that the parties'

intended the rights and protections granted under the Agreement to extend to an entity that later

became a parent, subsidiary, or affiliate of "CSR" following execution of the Agreement, it is

answered in the final subparagraph of Section 4.A(3), which states:

> If Bandspeed asserts a claim against an entity that is a beneficiary of the covenant
> not to sue in this Section 4(A)(3), ***including (i) the acquiring party following a***
> ***Change of Control*** . . . the Parties agree that such a claim standing alone will not
> constitute a material breach by Bandspeed of this Agreement so long as (x)
> Bandspeed at the time the claim was filed was not aware that the accused party
> was a beneficiary of the covenant hereunder and (y) Bandspeed takes reasonable

steps to immediately withdraw or dismiss any and all such claims in accordance with Bandspeed's covenants, grants, and obligations under the Agreement,

Agreement at § 4.A(3) (emphasis added).

This language confirms that the parties' anticipated that a Change of Control might occur in which Cambridge Silicon Radio Limited was acquired by another entity and recognized that the acquiring entity would be a beneficiary of protections granted by Bandspeed under the Agreement.  Accordingly, the plain language of the Agreement precludes limiting the license to only the parents, affiliates, and subsidiaries (if any) of "CSR" at the effective date of the Agreement.

Because Qualcomm Incorporated is now the parent of Cambridge Silicon Radio Limited and Qualcomm Atheros, Inc. and Qualcomm Innovation Center Inc. are now affiliates of Cambridge Silicon Radio Limited, the Accused Products of Defendants Qualcomm Incorporated, Qualcomm Atheros, Inc., and Qualcomm Innovation Center Inc. and their products are licensed under Section 3 of the Agreement.  As a result, Bandspeed's claims that Defendants accused products infringe the Patents-In-Suit are barred by the license granted under the Agreement.

### 2. The license granted under the Agreement was transferred and/or assigned to Defendants through a Change of Control.

In Bandspeed's Amended Answer, it has asserted a number of affirmative defenses to Defendants' counterclaims concerning the provisions of the Agreement.  Among those defenses is a contention that Defendants lack privity to the Agreement, and that release, license and covenant granted under the Agreement are non-assignable and non-transferable.  *See* Bandspeed's Amended Answer at ¶¶ 175-177 (Dkt. No. 98).  These defenses are baseless.

Despite Bandspeed's assertion to the contrary, the Agreement explicitly provides for assignment/transfer of the license granted to "CSR" in Section 3 of the Agreement.  For example, Section 3 states that the license granted by Bandspeed to "CSR" is "non-transferrable

(*except as otherwise set forth herein*).”  Agreement at § 3 (emphasis added).  Section 10 of the

Agreement provides the exceptions to any restriction on assignment/transfer:

> This Agreement is non-assignable/non-transferrable by any Party, **except** (a) in connection with an internal reorganization or restructuring . . . , or (b) **in connection with a Change of Control of [a] Party**,[3] in which case no consent shall be required whatsoever in connection with such Change of Control.

*Id.* at § 10 (emphasis added).  The Agreement defines a “Change of Control” to include “a

transaction or series of related transactions in which . . . a party (the “Acquired Party”)

consolidates or merges with or into another entity, or sells, assigns, conveys, transfers, leases, or

otherwise disposes of all or substantially all of its assets to another entity, or any other entity

consolidates or merges with or into, the Acquired Party.”  *Id.* at § 1.

The acquisition of CSR plc (the parent company of Cambridge Silicon Radio Limited) by

QGT constitutes a “Change of Control” under the Agreement because CSR plc (and thus its

subsidiary Cambridge Silicon Radio Limited) “dispose[d] of all . . . of its assets to” QGT  *See*

Agreement at § 1 (defining “Change of Control”); *supra* at 4-6.  In the event of a “Change of

Control” in which Cambridge Silicon Radio Limited is the Acquired Party, the Agreement

provides that the license granted under Sections 3 and the covenant granted under Section 4 of

the Agreement will be “automatically” transferred/assigned to the acquiring party.  *Id.* at § 10.

Thus, as a result of QGT’s acquisition of CSR plc, the license granted under Section 3 of the

Agreement to Cambridge Silicon Radio Limited and its parent CSR plc was “automatically”

transferred and/or assigned to QGT and its parent, subsidiaries, and affiliates.  *See* Agreement at

§ 10.

---

[3] The Agreement defines the term “Party” to include “CSR,” which is further defined to include “collectively, Cambridge Silicon Radio Limited, CSR Technology Inc., and each of their respective parents, subsidiaries, and affiliates.”  *Id.* at § 1.

Because Qualcomm Incorporated is the parent of QGT and Qualcomm Atheros, Inc. and Qualcomm Innovation Center Inc. are affiliates of QGT, *see supra* at 4, Defendants' Accused Products are licensed under Section 3 of the Agreement.  The express language of the Agreement confirms that this is true whether or not the Accused Products were commercially available from "CSR" prior to the date of the Change of Control.  Specifically, where a transaction does not amount to a "Change of Control," but nonetheless involves a transfer of "CSR" assets, the Agreement limits transfer/assignment of the license granted under Section 3 of the Agreement to "products that were commercially available" from "CSR" "prior to the effective date" of such a transaction.  *Id.* at § 4.A(3).  The Agreement places no such restriction on transactions amounting to a "Change of Control."  *Id.*  To the contrary, the Agreement expressly provides:

> In the event of a Change of Control where CSR is the Acquired Party, the rights, licenses, and covenants granted by Bandspeed in this Section 4 shall survive and be enforceable by the acquiring or surviving party.

*Id.*

Thus, when a "Change of Control" occurs in which "CSR" is the Acquired Party—such as occurred here with QGT's acquisition of CSR plc and its subsidiary Cambridge Silicon Radio Limited—the license granted under Section 3 "survives" and is enforceable by the Defendants because it is automatically transferred/assigned to the acquiring party and the products of the acquiring party are licensed regardless of whether they were commercially available prior to the date of the "Change of Control."  As a result, Bandspeed's claims that the Accused Products infringe the Patents-In-Suit are barred by the license granted under the Agreement.

**C.     Bandspeed's Claims of Infringement Are Barred Because Bandspeed Has Covenanted Not to Sue Defendants.**

In Section 4 of the Agreement, entitled "Ten-Year Covenant Not to Sue," Bandspeed granted a covenant not to sue "CSR" for activities relating to infringement of the Bandspeed

Asserted Patents.  Section 4(A)(1) of the Agreement states that, subject to payment of the settlement funds:

> Bandspeed, on behalf of itself and its successors and assigns, covenants not to bring any claim against CSR, asserting that CSR's activities during the Covenant Period in making, having made, using, offering to sell, selling, importing, exporting, or otherwise disposing of the CSR Licensed Products, infringe any of the [Bandspeed Asserted] Patents.

Agreement at § 4.

Although the question of whether the covenant granted by Bandspeed under the Agreement extends to Defendants is separate from the questions relating to the license provision, the arguments relating to these two issues are similar.  Like the license granted by Bandspeed under the Agreement, the covenant extends to Defendants and their products for two reasons. First, the covenant granted by Bandspeed under the Agreement extends to Defendants as the parent and affiliates of licensee Cambridge Silicon Radio Limited.  Second, the covenant was transferred and/or assigned to Defendants through a "Change of Control" of "CSR."

### 1.   *The covenant granted under the Agreement extends to Defendants as the parent and affiliates of Cambridge Silicon Radio Limited.*

The Agreement defines the "Covenant Period" as beginning on the Effective Date of October 18, 2012 and running through and including the tenth anniversary of the Effective Date (i.e., October 18, 2022).  *Id.* at § 1.  As explained above, the Agreement broadly defines the term "CSR" to include "Cambridge Silicon Radio Limited, CSR Technology Inc., and each of their respective parents, subsidiaries, and affiliates," and the term "CSR Licensed Products" to include "any and all products" of  Cambridge Silicon Radio Limited, CSR Technology Inc., and each of their respective parents, subsidiaries, and except products manufactured based on third-party designs.  Agreement at § 1; *see also supra* at 10.

When these definitions are applied, the covenant not to sue expressly extends to Cambridge Silicon Radio Limited, CSR Technology Inc., and each of their parents, subsidiaries, and affiliates for claims relating to infringement of the Bandspeed Asserted Patents by any product of Cambridge Silicon Radio Limited and CSR Technology Inc., and each of their parents, subsidiaries, and affiliates, except those manufactured based on third-party designs. There is no temporal limitation that would restrict the covenant to parents, subsidiaries, and affiliates of Cambridge Silicon Radio Limited or their products as of the Effective Date of the Agreement.

In response, Bandspeed is again anticipated to rely upon *Unova*.  Unlike the release provision at issue in *Unova*, however, the covenant provision in Section 4 of Agreement is not limited to acts of infringement occurring prior the date of the agreement.  *See Unova*, 363 F.3d at 1282; *see also supra* at 11-12.  Indeed, Section 4 of the Agreement specifically references future infringement by granting a covenant not to sue for infringement occurring within a 10-year period following the effective date of the Agreement.  *See* Agreement at Section 4.A(1) (granting a covenant not to "bring any claim against CSR, asserting that . . . activities during the Covenant Period . . . infringe the [Bandspeed Asserted Patents]), Section 1 (defining the "Covenant Period" as a ten-year period following the effective date of the Agreement).  Moreover, Section 4.A(3) expressly recognizes that the covenant-at-issue extends to Qualcomm as the acquirer of "CSR".  *See* Agreement at Section 4(A)(3) ("If Bandspeed asserts a claim against ***an entity that is a beneficiary of the covenant not to sue*** in this Section 4(A)(3), ***including (i) the acquiring party following a Change of Control***….") (emphasis added).

The First Circuit addressed a more analogous scenario in *GTE Wireless, Inc. v. Cellexis, International, Inc.*, 341 F.3d 1 (1st Cir. 2003).  Pursuant to a settlement agreement, Cellexis

- 17 -

covenanted not to sue GTE and its affiliates. *Id.* at 2. Cellexis subsequently sued Cellco, which became an affiliate of GTE after execution of the settlement agreement between Cellexis and GTE. *Id.* at 3. The district court held that the covenant granted under the Cellexis-GTE agreement did not extend to Cellco because the definition of GTE, which included its affiliates, was written in the present tense. The First Circuit reversed, in part, because it concluded that the definition of GTE included no temporal limitation and thus could encompass future affiliates. *Id.* at 6.

Because Qualcomm Incorporated is now the parent of Cambridge Silicon Radio Limited and Qualcomm Atheros, Inc. and Qualcomm Innovation Center Inc. are now affiliates of Cambridge Silicon Radio Limited and there is no temporal limitation in the definition of "CSR", *see supra* at 4, the covenant in Section 4 of the agreement extends to Defendants, and bars Bandspeed from asserting claims alleging that Defendants' Accused Products infringe the Patents-In-Suit.

> **2.      *Cambridge Silicon Radio Limited's rights under the covenant were transferred and/or assigned to Defendants through a Change of Control.***

As explained above, Section 10 of the Agreement explicitly permits the assignment/transfer of the license and covenant granted to "CSR" in the event of a "Change of Control" in which "CSR" is acquired by another entity. *See supra* at 5-6, 13-14. Indeed, the Agreement provides that, in such circumstances, the covenant not to sue granted by Bandspeed in Section 4 of the Agreement will be "automatically" transferred/assigned to the acquiring entity. *Id.*

Because the acquisition of CSR plc (the parent company of Cambridge Silicon Radio Limited) by QGT constitutes a Change of Control under the Agreement, *see supra* at 5-6, 13-14, the covenant granted under Section 4 of the Agreement by Bandspeed to Cambridge Silicon

Radio Limited and its parent CSR plc was "automatically" transferred and/or assigned to QGT and its parent, subsidiaries, and affiliates. *See* Agreement at § 10. Accordingly, the covenant granted under Section 4 of the Agreement automatically also now extends to Qualcomm Incorporated, which is the parent of QGT, and Qualcomm Atheros, Inc. and Qualcomm Innovation Center Inc., which are affiliates of QGT, and bars Bandspeed from asserting claims alleging that Defendants' Accused Products infringe the Patents-In-Suit.

## VII.    CONCLUSION

For the foregoing reasons, Defendants respectfully move for judgment on the pleadings that Bandspeed's claims against Defendants are barred by the release, license, and/or covenant granted by Bandspeed in the Agreement between Bandspeed and CSR.

Date:  March 23, 2016                          Respectfully submitted,

By: */s/ Richard S. Zembek*
    Richard S. Zembek (TBN 00797726)
    richard.zembek@nortonrosefulbright.com
    Eric B. Hall (TBN 24012767)
    eric.hall@nortonrosefulbright.com
    Daniel S. Leventhal (TBN 24050923)
    daniel.leventhal@nortonrosefulbright.com
    Darren T. Smith (TBN 24088433)
    darren.smith@nortonrosefulbright.com
    Norton Rose Fulbright US LLP
    Fulbright Tower
    1301 McKinney, Suite 5100
    Houston, Texas 77010-3095
    Tel: (713) 651-5151
    Fax: (713) 651-5246

Alan D Albright (TBN 00973650)
Chad Ennis (TBN 24045834)
Bracewell LLP
111 Congress Ave., Suite 2300
Austin, TX 78701
512-472-7800
Fax: 800-404-3970
alan.albright@bracewelllaw.com
chad.ennis@bracewelllaw.com

**Counsel for Defendants Qualcomm Incorporated, Qualcomm Atheros, Inc., and Qualcomm Innovation Center Inc.**

## CERTIFICATE OF CONFERENCE

The undersigned herby certifies that counsel for Defendants has complied with the meet and confer requirement in the Local Rules.  On March 7, 2016, counsel for Defendants met and conferred with counsel for Bandspeed. No agreement could be reached.

*/s/ Alan D Albright*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on March 23, 2016 all counsel of record  are being served with a copy of this document via electronic mail.


_/s/ Alan D Albright_____