## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **BANDSPEED, INC.,** | § | |
| | § | |
| **PLAINTIFF** | § | |
| | § | |
| **, v.** | § | **Case No. 1:14-cv-00436-LY** |
| | § | |
| **QUALCOMM INCORPORATED,** | § | |
| **QUALCOMM ATHEROS, INC., and** | § | |
| **QUALCOMM INNOVATION** | § | |
| **CENTER INC.,** | § | |
| | § | |
| **DEFENDANTS.** | § | |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS THAT PLAINTIFF'S INFRINGEMENT CLAIMS ARE BARRED

Bandspeed Inc.'s ("Bandspeed") opposition boils down to a single argument—the term "CSR" does not include Defendants Qualcomm Incorporated, Qualcomm Atheros, Inc., and Qualcomm Innovation Center Inc. (collectively, "Defendants") and thus the provisions of the Agreement do not extend to Defendants. That argument is unavailing for several reasons. First, the Agreement unambiguously defines "CSR" to include its parents, subsidiaries, and affiliates, which includes Defendants. Second, and independently, the release granted under the Agreement extends to Defendants as the successors and assigns of "CSR." Additionally, the license and covenant granted under the Agreement were automatically transferred/assigned to Defendants pursuant to a "Change of Control" of "CSR."

## I.      The Agreement Unambiguously Defines "CSR" to Include Defendants.

The unambiguous language of the Agreement defines "CSR" to include "parents, subsidiaries, and affiliates." Agreement at § 1. It is undisputable that Qualcomm Incorporated is a "parent" of Cambridge Silicon Radio Limited, and that Qualcomm Atheros, Inc. and Qualcomm Innovation Center are affiliates. *See* Mot. at 4-5; *supra* at 10. Bandspeed's response—replete with attorney argument—tries but ultimately fails to present evidence of any intent to temporally limit the entities encompassed by "CSR" to the parents, subsidiaries, and affiliates of Cambridge Silicon Radio Limited and CSR Technology Inc. in existence as of the Effective Date of the Agreement. Bandspeed fails to present such evidence because the plain language of the Agreement is to the contrary, with numerous provisions that confirm the parties' intent at the time they entered into the Agreement that the term "CSR" be dynamic in order to accommodate changes in ownership, control, and composition of the entities encompassed by the term.

Defendants agree with Bandspeed that the term "CSR" must be interpreted based on the parties' intent as of the Effective Date of the Agreement. Resp. at 5-6. The parties' views

quickly diverge, however, because Defendants focus on the most probative evidence of the parties' intent as of the Effective Date of the Agreement—the unambiguous language of the Agreement itself. *See Cachil Dehe Band ofen Wintun Indians of Colusa Indian Cmty. v. California*, 618 F.3d 1066, 1073 (9th Cir. 2010) ("[T]he objective intent of the contracting parties is a legal question determined solely by reference to the contract's terms.").[1] Neither the definition of "CSR," nor any other provision of the Agreement, includes the temporal limitation that Bandspeed now seeks to add to limit the "parents, subsidiaries, and affiliates" encompassed by "CSR" to the parents, subsidiaries, and affiliates in existence *as of the Effective Date of the Agreement*. *See, e.g.*, Agreement at § 1. If the parties had intended to limit the term "CSR" to parents, subsidiaries, and affiliates of Cambridge Silicon Radio Limited and CSR Technology Inc. in existence as of the Effective Date of the Agreement, one would expect the Agreement to specifically identify those entities, which were certainly known at the time. Instead, recognizing that changes to the ownership, control and/or constitution of Cambridge Silicon Radio Limited and CSR Technology Inc. might occur during the term of the Agreement, the parties defined "CSR" in a way that permits the entities encompassed by the term to change over time as the parents, subsidiaries and affiliates change.[2] *See* Agreement at § 1 (defining "CSR").

That the parties did not intend to include the temporal restriction now suggested by Bandspeed is confirmed by numerous provisions that consistently address foreseeable changes to ownership and control. The inclusion of these provisions is evidence of an intent to bestow rights on a future acquirer of "CSR." First, the Agreement provides for the *automatic* transfer

---

[1] The Agreement selects California law as its governing law. Agreement at § 11.
[2] The term "Bandspeed" is similarly defined to include "Bandspeed, Inc. and all its subsidiaries, and affiliates," permitting the entities encompassed by the term to change over time as the subsidiaries and affiliates of Bandspeed, Inc. change. *See* Agreement at § 1 (defining "Bandspeed").

and/or assignment of the rights and obligations granted under the Agreement when there is a change to the parent company of one of the parties in the future.  Specifically, Section 10 states that, the "Agreement is non-assignable/non-transferrable by any Party, *except* (a) in connection with an internal reorganization or restructuring . . . , or (b) *in connection with a Change of Control of [a] Party*, *in which case . . . the changes to the rights and obligations hereunder shall occur automatically*."  Agreement at § 10.[3]  The Agreement defines a "Change of Control" as "a transaction or series of related transactions in which . . . a party (the "Acquired Party") consolidates or merges with or into another entity, or sells, assigns, conveys, transfers, leases, or otherwise disposes of all or substantially all of its assets to another entity, or any other entity consolidates or merges with or into, the Acquired Party."  Agreement at § 1.  Thus, where the parent of a party to the Agreement changes because the party is acquired by another entity, the rights granted under the agreement are "automatically" transferred/assigned to the new parent entity.  Had the parties intended to temporally limit the beneficiaries of the release, license, and covenant granted by Bandspeed to Cambridge Silicon Radio Limited and CSR Technology Inc., and each of their respective parents, subsidiaries, and affiliates in existence *as of the Effective Date of the Agreement*, there would have been no need to provide for an automatic transfer of rights and obligations in the event of a "Change of Control."  Indeed, the parties would have simply omitted subsection (b) of Section 10 in its entirety.

Second, the Agreement demonstrates that the parties anticipated that a Change of Control could occur where the parents, subsidiaries, and affiliates of a party to the Agreement change, but the other party may not know the identities of the new parents, subsidiaries, and affiliates (or even that the Change of Control has occurred), and may unknowingly violate the Agreement by

---

[3] Unless otherwise indicated, all emphasis added.

bringing a claim against a new parent, subsidiary, and/or affiliate that is now a beneficiary to the Agreement. To protect themselves from liability for breach in these circumstances, the parties included prophylactic provisions in the Agreement to make clear that bringing a claim against an entity that had become a beneficiary to the Agreement does not constitute a breach if the party bringing the claim is unaware of the status of the defendant as a new parent subsidiary, or affiliate. Specifically, Section 4(A)(3) states:

> If Bandspeed **asserts a claim against an entity that is the beneficiary** of the covenant not to sue described in this Section 4(A)(3), **including (i) the acquiring party following a Change of Control** . . . , the Parties agree that **such a claim standing alone will not constitute a material breach** by Bandspeed of this Agreement **so long as (x) Bandspeed at the time the claim was filed was not aware that the accused party was a beneficiary of the covenant** hereunder and (y) Bandspeed takes reasonable steps to immediately withdraw or dismiss any and all such claims in accordance with Bandspeed's covenants, grants, and obligations under this Agreement.

Agreement at § 4(A)(3); *see also id.* at § 4(B)(3) (providing similar protections to CSR).

Had the parties intended to temporally limit the beneficiaries of the release, license, and covenant granted by Bandspeed under the Agreement to Cambridge Silicon Radio Limited and CSR Technology Inc., and each of their respective parents, subsidiaries, and affiliates in existence **as of the Effective Date of the Agreement**, the type of protections against liability for breach provided in § 4 would be unnecessary. This is so because, if new parents, subsidiaries, and/or affiliates are not beneficiaries to the Agreement following a Change of Control, bringing a claim against a new parent, subsidiary, and/or affiliate could not constitute a breach and thus no protection against liability for such breach would be necessary. Interpreting "CSR" as Bandspeed advocates would improperly render these provisions superfluous.[4] *See Farmers Ins.*

---

[4] Bandspeed asserts that the term "CSR Licensed Products" does not include the products of Defendants because Defendants were not the parents, subsidiaries, and/or affiliates Cambridge Silicon Radio Limited and CSR Technology Inc. as of the Effective Date of the Agreement. Such an interpretation is contrary to the parties' intent as expressed in the Agreement. Had the

*Exchange v. Knopp* (1996) 50 Cal. App. 4th 1415, 1421 (rejecting interpretation that rendered language in the contract "superfluous and redundant"); *Super 7 Motel Associates v. Wang* (1993) 16 Cal. App. 4th 541, 546 (rejecting interpretation that would render language in the contract "redundant and unnecessary").

Third, the Agreement provides broader rights to a future acquirer in a complete acquisition of "CSR" than in a partial acquisition involving a "CSR" subsidiary, business unit, or asset. In the event of a complete (or substantially complete) acquisition of the assets of "CSR," "the rights, licenses, and covenants, granted by Bandspeed . . . shall survive and shall be enforceable by the acquiring or surviving party." Agreement at § 4(A)(3), § 1 (defining "Change of Control" as a complete acquisition). In contrast, in the event of a partial acquisition, such as where "CSR sells, transfers, spins off, or otherwise conducts any transaction . . . with respect to any of its subsidiaries, business units, or assets ('CSR Transferred Entity') such that CSR no longer directly or indirectly owns or controls more than fifty percent (50%)" of the CSR Transferred Entity, "the "covenants and rights granted by Bandspeed with respect to [the] CSR Transferred Entity . . . shall survive and shall be enforceable by [the] CSR Transferred Entity and its parent . . . , ***but only with regard to those products included in the CSR Transferred Entity that were commercially available prior to the effective date of [the transfer]***." Agreement at § 4(A)(3). Notably, Bandspeed now seeks to impose on Defendants the limitations placed on the rights of a partial acquirer of "CSR." As the plain language of the Agreement demonstrates,

---

parties intended to limit the term "CSR Licensed Products" to products of Cambridge Silicon Radio Limited and CSR Technology Inc., and each of their respective parents, subsidiaries, and affiliates in existence ***as of the Effective Date of the Agreement***, the protections against liability for breach provided in § 4 would be unnecessary. This is so because, if the products of new parents, subsidiaries, and/or affiliates are not covered by the Agreement following a Change of Control, bringing a claim against a new parent, subsidiary, and/or affiliate based on those products would not constitute a breach and no protection against liability for breach would be necessary.

however, no such limitation is imposed on the rights of a complete acquirer of "CSR."

Fourth, in addition to defining the effect of an acquisition of "CSR" would have on the rights granted *by* "Bandspeed" to "CSR," the Agreement defines the effect an acquisition of "CSR" would have on the rights granted *to* Bandspeed.  In the event of a complete acquisition of "CSR," the rights granted by CSR *to* Bandspeed "shall survive and shall be enforceable against the acquiring or surviving party," but "*only* with regard to the CSR Asserted Patents; . . . any covenant granted by CSR with respect to any [patent] ***other than*** a CSR Asserted Patent immediately and automatically terminates."   Agreement at § 4(B)(3) (emphases in original). This provision, in combination with those discussed above, demonstrates that the parties recognized the likelihood that "CSR" would be acquired after execution of the agreement and endeavored to define the rights of both the future acquirer of "CSR" and Bandspeed.

To support its argument "CSR" should be limited to parents, subsidiaries, and affiliates in existence as of the Effective Date of the Agreement, Bandspeed relies heavily on *Unova, Inc. v. Acer Inc.*, 363 F.3d 1278 (Fed. Cir. 2004).  As explained in Defendants' Motion, however, Bandspeed's reliance on *Unova* is misplaced.  Unlike the Agreement at issue here, the *Unova* agreement evidenced an explicit intent to temporally limit the beneficiaries to the agreement. Unova and Compaq entered into an agreement under which Unova granted to Compaq and its "parents" a release from infringement claims relating to conduct "which took place on or before May 4, 2001." *Id.* at 1282.  That is, unlike the Agreement at issue here, the *Unova* agreement included a temporally restricted release of past acts of infringement.  In holding that the release did not extend to Hewlett-Packard following its subsequent purchase of Compaq in 2002, the Federal Circuit explained that, because the release provision referred only to conduct "which took place on or before May 4, 2001", it "most naturally [did] not refer to Compaq's future

parents." *Id.* at 1282.  No comparable temporal limitation is included in the Agreement here.

As explained above, the Agreement at issue here provides no evidence the parties intended to temporally limit the entities encompassed by the term "CSR."  To the contrary, the Agreement evidences a recognition by the parties that changes to the ownership, control, and/or constitution of Cambridge Silicon Radio Limited and CSR Technology Inc. might occur during the term of the Agreement and an intent to extend the rights granted under the Agreement to the new parents, subsidiaries and affiliates of Cambridge Silicon Radio Limited and CSR Technology Inc.  Indeed, it expressly releases "successors and assigns" from "future claims." Agreement at § 2(C).  Accordingly, there is no justification for interpreting "CSR" to exclude Defendants, which are now the parents and affiliates of Cambridge Silicon Radio Limited.

## II.    The Release Also Extends to Defendants as the Successors and/or Assigns of "CSR."

As explained in Defendants' Motion, Bandspeed granted three independent methods of assuring that, in exchange for a substantial settlement payment, Cambridge Silicon Radio Limited, CSR Technology Inc., and each of their parents, subsidiaries, and affiliates (collectively "Protected Entities") would never again be threatened with claims of patent infringement by Bandspeed:  a release, a license, and a covenant not to sue.  Mot. at 2.  In contrast to the license and covenant provisions, the release provision includes language that explicitly encompasses entities beyond those encompassed by the term "CSR."  For example, in Section 2(C) of the Agreement Bandspeed releases "[CSR] ***and its successors and assigns*** of all past, present, and future claims" of infringement as to the Bandspeed Asserted Patents.  Agreement at § 2(C).

Bandspeed argues that, under *Advanced Micro Devices, Inc. v. Altera Corp.*, 1996 WL 119482 (N.D. Cal. Mar. 11, 1996) (hereinafter *AMD*), a release does not extend to the successors of a party to the agreement unless the agreement includes an explicit statement that the rights granted under the agreement are extended to the successor.  Resp. at 11.  Bandspeed's reading of

*AMD* is incorrect.  In that case, the licenses and rights granted under the agreement were to "MMI" with no reference to successors.  *AMD*, 1996 WL 119482 at * 3.  Thus, unlike the Agreement at issue here, the grant did not expressly encompass successors. *Compare* Agreement at § 2(C) ("Bandspeed . . . releases . . . [CSR] and its successors and assigns") *with AMD*, 1996 WL 119482 at * 3 ("ALTERA grants and agrees to grant to MMI . . . a nonexclusive, royalty-free license").  The agreement in *AMD* included a separate provision stating that the licenses and rights granted under the Agreement are "extendible to any [entity] succeeding to [the] entire business . . . of either party." *AMD*, 1996 WL 119482 at * 3.  The court explained that, although the agreement granted rights to MMI alone and included a general prohibition against transfer/assignment of those rights, "[i]n the case of entities succeeding to the entire business . . . of a party, the Agreement clearly allows . . . an extension of the licenses and rights granted under the Agreement to the successor." *Id.*  Thus, the court held that, "under the plain language of the Agreement," AMD was licensed as a successor to MMI.  *Id.* at * 4. Here, unlike the agreement in *AMD*, the plain language of the release provision grants the release not just to "CSR," but also to its "successors."  Agreement at § 2(C).  Because the release granted by Bandspeed was granted to "CSR ***and its successors***," there is no need for extension language.  And regardless, the parties intended the release to be as broad as possible—the agreement provides that "the foregoing release ***extends*** to all claims whether or not claimed or suspected . . . ."  Agreement at § 2(c).

As explained in Defendants' Motion, when Qualcomm Incorporated's subsidiary Qualcomm Global Trading Pte. Limited ("QGT") acquired CSR plc, Qualcomm Incorporated became the parent company and successor of CSR plc ***and its subsidiary Cambridge Silicon Radio Limited***.[5]  Mot. at 8.  And when Defendant Qualcomm Incorporated became the successor

---

[5]As explained in Section IV below, there can be no dispute as to QGT's acquisition of CSR plc.

of Cambridge Silicon Radio Limited, so did Qualcomm Incorporated's subsidiaries Qualcomm Atheros, Inc. and Qualcomm Innovation Center, Inc.  *Id.*  Thus, whether or not "CSR" is temporally limited to parents, subsidiaries, and affiliates in existence ***as of the Effective Date of the Agreement***, the release granted under the Agreement explicitly extends to Defendants as the successors of "CSR."

### III.   In Addition, the License and Covenant Were Automatically Transferred to Defendants Pursuant To A "Change of Control" of "CSR."

Despite Bandspeed's assertion to the contrary, the Agreement explicitly provides for the transfer/assignment of the license and covenant granted to "CSR" in Sections 3 and 4 of the Agreement in the event that one of the entities comprising "CSR" undergoes a "Change of Control."  Resp. at 14-15.  In making this argument, Bandspeed ignores the plain language of Section 10 of the Agreement, which states in relevant part:

> This Agreement is non-assignable/non-transferrable by any Party, ***except*** (a) in connection with an internal reorganization or restructuring . . . , or (b) ***in connection with a Change of Control of [a] Party*** . . . .

Agreement at § 10; *see also id* at § 4(A)(3) ("In the event of a Change of Control where CSR is the Acquired Party, the rights, licenses, and covenants granted by Bandspeed in this Section 4 shall survive and shall be enforceable by the acquiring or surviving party.")  Section 10 further provides that, in the event of a "Change of Control" in which Cambridge Silicon Radio Limited is the Acquired Party, the transfer/assignment of the license and covenant granted under Sections 3 and 4 of the Agreement is ***automatic***. *Id.* at § 10.  Thus, as explained in Defendants' Motion, as a result of QGT's acquisition of CSR plc, the license  and covenant granted to Cambridge Silicon Radio Limited and its parent CSR plc under Sections 3 and 4 of the Agreement were "automatically" transferred and/or assigned to QGT and its parent, subsidiaries, and affiliates. *See* Mot. at 13-15, 18-19.

**IV.    There Are No Disputed Issues of Fact.**

In an effort to manufacture a fact issue, Bandspeed characterizes QGT's acquisition of CSR plc as an "alleged acquisition," but there can be no dispute as to QGT's acquisition of CSR plc.  The fact that QGT acquired CSR plc is a matter of official record of which the Court may take judicial notice.[6]  *United States v. GSMIDEA City, LLC*, 798 F.3d 265, 274 (5th Cir. 2015); Fed. R. Evid. 201(b) ("A Judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial Jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").   Accordingly, no discovery is necessary on this issue.   *See GSMIDEA*, 798 F.3d at 274; *see also Flagg v. Stryker Corp*, -- F.3d – , 2016 WL 1169067 (5th Cir. 2016).

The only issue before the Court is whether the release, license, or covenant granted under the Agreement bars Bandspeed's claims against Defendants.  The interpretation of a contract is a matter of law that can be resolved based on the plain language of the Agreement. *See e.g.*, *Novamedix, Ltd. v. NDM Acquisition Corp.*, 166 F.3d 1177, 1180 (Fed. Cir. 1999); *Cachil*, 618 F.3d 1066, 1073 (9th Cir. 2010).

**V.    Conclusion**

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants Motion for Judgement on the Pleadings to enforce the terms of the Agreement and dismiss Bandspeed's claims against Defendants with prejudice.

---

[6] *See* Ex. A (Order regarding Scheme of Arrangement, *In the Matter of CSR plc*, No. 7787 of 2014, (NICh Aug. 11, 2015) (approving the scheme of arrangement for the acquisition of CSR plc by QGT); Ex. B (CSR plc Form 6K, Securities and Exchange Commission (Aug. 13, 2015) (stating that the "acquisition of CSR plc by [QGT], an indirect wholly-owned subsidiary of Qualcomm Incorporated, by way of a scheme of arrangement . . . , which was itself sanctioned by the Court on 11 August 2015 . . . has become effective")).

Date: May 16, 2016                    Respectfully submitted,

                                      By: */s/ Richard S. Zembek* _____
                                          Richard S. Zembek (TBN 00797726)
                                          richard.zembek@nortonrosefulbright.com
                                          Eric B. Hall (TBN 24012767)
                                          eric.hall@nortonrosefulbright.com
                                          Daniel S. Leventhal (TBN 24050923)
                                          daniel.leventhal@nortonrosefulbright.com
                                          Darren T. Smith (TBN 24088433)
                                          darren.smith@nortonrosefulbright.com
                                          Stephanie N. DeBrow (TBN 24074119)
                                          stephanie.debrow@nortonrosefulbright.com
                                          Norton Rose Fulbright US LLP
                                          Fulbright Tower
                                          1301 McKinney, Suite 5100
                                          Houston, Texas 77010-3095
                                          Tel: (713) 651-5151
                                          Fax: (713) 651-5246

                                          Alan D Albright (TBN 00973650)
                                          Chad Ennis (TBN 24045834)
                                          Bracewell LLP
                                          111 Congress Ave., Suite 2300
                                          Austin, TX 78701
                                          512-472-7800
                                          Fax: 800-404-3970
                                          alan.albright@bracewelllaw.com
                                          chad.ennis@bracewelllaw.com

                                          **Counsel for Defendants Qualcomm
                                          Incorporated, Qualcomm Atheros,
                                          Inc., and Qualcomm Innovation
                                          Center Inc.**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 16, 2016, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

*/s/ Alan D Albright*